IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAX A. JACKSON,

       Petitioner,

v.                                                                                      Civ. No. 02-634 LH/RHS

JOE WILLIAMS, Warden, et al.,

       Respondents.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

     1. THIS MATTER comes before the Court upon Petitioner's Brief on the Merits [Doc. No. 12] filed June 11, 2003, in support of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 . Petitioner is currently incarcerated, following a jury trial which convicted him of one count of conspiring to traffic cocaine and three counts of trafficking cocaine. Petitioner was sentenced to 24 years imprisonment.

     2. Because Mr. Jackson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1994 (AEDPA), its standards apply to this case. Upchurch v. Bruce, 333 F.3d 1158, 1162-63 (10th Cir. 2003). Under those standards, a federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is contrary to, or involved an unreasonable application of clearly established Federal law, as determined by Supreme Court precedent; or (2) is an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254 (d)(1)-(2); Williams v. Taylor, 529 U.S. 362, 405-06, 411-13 (2000). A state decision is an unreasonable application of Supreme Court precedent if it identifies the correct governing legal

principle but unreasonably applies that principle to the facts of the prisoner's case.  Id.  A federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced.  Wiggins v. Smith, _ U.S._, 123 S. Ct. 2527, 2535 (2003) quoting Lockyer v. Andrade, 538 U.S. 63, 74, 123 S. Ct. 1166, 1175 (2003).  A state decision rests on an unreasonable determination of the facts where it is shown by clear and convincing evidence, 28 U.S.C. § 2254 (e)(1), that the factual finding is erroneous.  Id. at 2539.

3.  All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary.  Trice v. Ward, 196 F.3d 1151, 1159 (10th Cir. 1999), cert. denied, 531 U.S. 835 (2000); Rule 8(a), Rules Governing Habeas Corpus Under Section 2254.  For the reasons set forth below, the Court recommends that the petition be denied.

**General Factual and Procedural Overview**

4. The State of New Mexico indicted Mr. Jackson for three counts of trafficking cocaine by distribution and one count of conspiracy to traffic cocaine on October 3, 1996.  Gary C. Mitchell, P.C., was appointed to represent Jackson.  On October 24, 1996, the Mitchell firm filed a demand for discovery on Jackson's behalf.  The document bears the name of Scot Key as counsel for Jackson. Key stated that a secretary signed the pleading for him and that the signature on the document was not his.  Key Dep. 13-19.

5. In November 1996, Key was elected district attorney for the Twelfth Judicial District,  Key Dep. 12, and on January 1, 1997, he took office.  Key Dep. at 5.  The district attorney's office continued the prosecution of Jackson after Key took office.  Key instituted a policy of screening himself from cases in which the Mitchell firm had been involved during the time Key had been

employed there. Key Dep. 19-21. Key stated that under the policy, the Jackson case should have been screened, but was not. Key Dep. 22-23. Assistant District Attorney RoxeAnne Matise represented the state in Mr. Jackson's case. In May 1997, the Mitchell firm withdrew as Jackson's counsel, and Noel Orquiz entered his appearance as defense counsel. Orquiz Dep. 3.

6. A jury trial was held in August 1997. During jury selection, the prosecution exercised a peremptory challenge against venire member Theodore Rodriguez. Trial tape 3 at 7.3. Defense counsel objected and asked that the prosecution be required to state a race-neutral reason for the strike. Id. The trial judge requested the prosecutor to make a record of the reasons for the challenge. The prosecutor stated that she believed that Mr. Rodriguez was biased toward Mr Jackson because the prospective juror had expressed concern about whether Mr. Jackson (who is African-American) would be able to get a fair trial when none of the persons in the venire appeared to be African-American. Id. at 8.6. The trial judge found that prosecutor challenged the juror because "his over sensitivity to race related issued may affect his ability to be fair and impartial" which satisfied the requirement under Batson v. Kentucky, 476 U.S. 79, 97-98(1986) of a race-neutral reason, overruled the objection and permitted the prosecution to exercise the peremptory strike. Id.

7. At trial, the state presented evidence that Jackson had sold cocaine to Deputy Rudy Castro, an undercover narcotics agent of the Otero County Sheriff's Office. Trial tapes 5 and 6. The trial court refused to allow Mr. Jackson to present testimony from Melvin Woods that Agent Castro, the state's key witness, had approached Mr. Woods and offered to sell him drugs. Trial tape 7, 17.0. The state's informant, Mark Jenkins, did not testify at the trial.

8. The jury found Mr. Jackson guilty on all counts. The court found Jackson eligible for habitual offender enhancement and sentenced him to a total of 24 years incarceration.

9. On direct appeal, Plaintiff presented three issues for review: (1) that the State used a peremptory challenge in a discriminatory manner when it removed a Native American juror; (2) that his right to confront witnesses against him was violated when the trial court refused to allow him to present testimony that undercover officer Castro was attempting to sell a controlled substance during the investigation; and (3) that the State should not have been allowed to introduce a tape-recording of a conversation between Mr. Jackson and Agent Castro because the State did not disclose the tape until the eve of trial. The Court of Appeals affirmed the conviction. State v Jackson, No. 19,284 (N.M.Ct.App. July 14, 1998). On August 24, 1998, Mr. Jackson's petition for writ of certiorari was denied. State v. Jackson. 964 P.2d 818 (Table), 125 N.M. 654 (1998).

10. On June 11, 1999, Jackson filed a pro se state petition for writ of habeas corpus. Answer, Exh H.[1] The district court denied the petition. Exh. I. The New Mexico Supreme Court denied certiorari on September 7, 1999. Exh. K.

11. On September 29, 1999, Jackson filed a petition for a writ of habeas corpus in this court. Civ. 99-1107 BB/KBM. On September 19, 2000, the court dismissed the petition without prejudice to permit Mr. Jackson to exhaust certain claims in the New Mexico courts.

12. On December 29, 2000, Jackson filed his amended petition for writ of habeas corpus in state court. Exh. L. On January 16, 2001, the state district court entered an order holding that Jackson was not entitled to relief as a matter of law on all claims other than the conflict of interest and related ineffective assistance of counsel claims. Exh. M. Following discovery, the parties submitted those issues to the court on a stipulated record. After briefing, the court entered its order

---

[1] Unless otherwise noted, all citations to exhibits are those attached to Respondent's Answer.

4

denying the petition. Exh. O. Jackson filed a Petition for Writ of Certiorari which was denied by the New Mexico Supreme Court on May 14, 2002. Exh. T.

13. Mr. Jackson's § 2254 petition raised six grounds of error, one of which included several sub-claims. In his brief on the merits, Petitioner concedes that he has failed to establish a basis for relief on four of those claims. Petitioner argues that he is entitled to relief on claims two and five of his petition.

**Batson Challenge**

14. Claim two alleges a violation of Mr. Jackson's right to a jury drawn from a fair cross-section of the community, his right to equal protection and his right to due process based on the exercise of a peremptory challenge by the prosecution against venire member, Theodore Rodriguez. Mr. Jackson is African-American and was tried by an all white jury. In its memorandum opinion on direct appeal, the New Mexico Court of Appeals described Mr. Rodriguez as Native-American.

15. The Respondent contends that the conclusion that Mr. Rodriguez is Native-American is not supported by any facts on the record. The state court's finding on this issue is entitled to a presumption of correctness under 28 U.S.C. §2254 (e)(1). This Court finds no reason to disagree with that conclusion.

16. To establish that the prosecutor exercised peremptory challenges in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), Petitioner must establish, among other things, that the prosecution has exercised peremptory challenges to remove members of a particular race from the venire. <u>United State v. Johnson</u>, 941 F.2d 1102, 1107 (10th Cir. 1991). The Court of Appeals found that Mr. Jackson had established a prima facie case of racial discrimination under <u>Batson</u> "based in the showing that the State had used a peremptory challenge to exclude the only Native-American juror

who had a chance of serving on the jury," but that the prosecution had given a "race-neutral explanation" for its challenge. The Court stated that a defendant "is not entitled to have a juror who had expressed sympathy toward him serve on the jury" and that "the prosecutor did not use its peremptory challenge to exclude this juror because of the juror's race, but because the juror's comments indicated the juror was sympathetic to [Jackson]." Exh. E at p 2-3.

17.     Mr. Jackson argues that the prosecution's response is pretextual and that the prosecution's peremptory challenge was based on Rodriguez's race. He contends that a minority venireperson's concern about the racial imbalance of the venire cannot be separated from that venireperson's race and from the perspective that his experience as a member of a minority group provides. Although the Respondent argues that this issue was not raised before, Jackson did argue that the prosecutor's failure to question the juror about the prosecutor's concerns suggests that the prosecutor's reasons were pretextual.    The issue has not been procedurally defaulted.

18.     Once a defendant establishes a prima facie case of racial discrimination, then the prosecutor must provide a race neutral explanation for challenging the juror. Batson, 576 U.S. at 97. A race-neutral explanation "means an explanation based on something other than the race of the juror." Hernandez v. New York, 500 U.S. 352, 360 (1991). A juror's bias or inability to decide the case impartially may be a race-neutral explanation. Powers v. Ohio, 499 U.S. 400, 409 (1991).

19.     The state court found and this Court agrees that the prosecution's reason for the peremptory challenge was supported by the record. The prosecutor's belief that Mr. Rodriguez's statement suggested a bias in Mr. Jackson's favor is an appropriate reason for wishing to exclude Mr. Rodriguez from the jury. It is Mr. Jackson's burden to establish improper racial motivation for the peremptory challenge and he has failed to meet that burden under §2254 (d). The state court's

decision is not contrary to Supreme Court precedent, is not an unreasonable application of Supreme Court precedent, and is not based on an unreasonable determination of the facts. Accordingly, this Court finds Mr. Jackson's Batson challenge to be without merit.

**Ineffective Assistance of Counsel**

20. Claim five alleges ineffective assistance of counsel for four reasons. Mr. Jackson claims that Mr. Orquiz erred when he:

(a) failed to seek disqualification of the district attorney's office;

(b) failed to object that the trial jury did not represent a fair cross-section of the community;

(c) failed to investigate the credibility of prosecution witness, Rudy Castro; and

(d) failed to move to compel disclosure of the location of informant Mark Jenkins.

21. To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, Petitioner must establish that his counsel's performance "fell below an objective standard of reasonableness." Id. at 688. To meet this first prong, "petitioner must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Hickman v. Spears, 160 F.3d 1269, 1273 (10th Cir. 1998) (quoting Strickland, 466 U.S. at 689); see also Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998). When analyzing the performance of Petitioner's counsel, this Court will focus on "not what is prudent or appropriate, but only what is constitutionally compelled." United States v. Cronic, 466 U.S. 648, 665 n.38 (1984). Additionally, Petitioner's claim of ineffective assistance of counsel will be viewed "from the perspective of his counsel at the time he rendered his legal services, not in hindsight." Hickman, 160 F.3d at 1273; accord Strickland, 466 U.S. at 689.

22. The second prong of the <u>Strickland</u> test requires Petitioner to show that his counsel's deficient performance prejudiced his defense. <u>Strickland</u>, 466 U.S. at 692. To satisfy the second prong, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

**(A)  Counsel's  Failure to Seek Disqualification of District Attorney's Office**

23. Jackson claims that his counsel provided ineffective assistance by failing to seek disqualification of Scot Key and the District Attorney's office. Initially Mr. Jackson was represented by the law firm of Gary C. Mitchell, P.C. which employed Scot Key. Mr. Key allegedly signed a Notice of Discovery Demand on behalf of Mr. Jackson. In November of 1996, Mr. Key was elected District Attorney and that office conducted the prosecution of Mr. Jackson.

24. Mr. Jackson raised this issue in his amended state habeas petition. Exh. L at 5-6. The state habeas court allowed evidentiary development on that aspect of Petitioner's ineffective assistance of counsel claim. The state court ordered discovery and presentation of evidence including depositions of Scot Key, Roxeanne Matise (the assistant district attorney who represented the state at trial of Mr. Jackson's case), Beatrice Brickhouse (an attorney in the Gary Mitchell law firm who represented Jackson during part of the pretrial period) and Noel Orquiz (Jackson's trial counsel). No further evidentiary proceedings are required.

25. The state court found that no evidence was presented that Scot Key participated personally and substantially in any matter involving Jackson while employed at the Mitchell law firm. The court concluded that : (1) Jackson failed to establish a conflict of interest which would disqualify the District Attorney's Office from prosecuting Jackson; (2) even if a conflict of interest existed, Jackson failed to establish that Scot Key participated in Jackson's prosecution; (3) even if a conflict

existed, a reasonable investigation by a reasonably competent defense counsel would not have disclosed the conflict; and (4) even if the conflict existed and a reasonable investigation would have disclosed the conflict, Jackson failed to establish that defense counsel's failure to seek disqualification based on the conflict prejudiced Jackson. Exh. O. The state court therefore denied Jackson's claims.

26. Under § 2254(e)(1), this court must presume the state court's findings to be correct, unless Mr. Jackson rebuts that presumption by clear and convincing evidence. The record generally supports the state court's findings and conclusions and this Court finds that Mr. Jackson did not establish that the state court erred in its decision.

27. In order to establish ineffective assistance of counsel under the Strickland standard, Mr. Jackson must show that his counsel's failure to challenge the procedure was objectively unreasonable and caused prejudice to the defense. Having determined that the decision of the state court was correct on the conflict issue, the Court finds that Mr. Orquiz was not ineffective by failing to seek disqualification of the district attorney's office. Counsel's failure to raise a non-meritorious claim could not have caused prejudice to the Petitioner.

**(B) Fair Cross Section of the Community Claim**

28. Mr. Jackson contends that Mr. Orquiz rendered ineffective assistance of counsel by failing to raise a Sixth and Fourteenth Amendment fair cross-section challenge to the jury selection procedure. He stated that the venire from which his jury was selected had no African-American members and that his trial counsel should therefore have challenged the venire selection procedure.

29. In order to establish a prima facie violation of the Sixth Amendment right to a venire representing a fair cross section of the community Petitioner must show: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in

9

venires from which juries are selected is not fair and reasonable in relation to the numbers of such persons in the community; and (3) that this under-representation is due to systemic exclusion of the group in the jury selection process. Duren v. Missouri, 439 U.S. 357, 364 (1979). Mr. Jackson's Sixth Amendment claim cannot be established merely by showing that there were no jurors of Mr. Jackson's race on his jury venire or on his jury.

30. Respondent argues that Mr Jackson failed to prove his claim because he did not show that African-Americans constitute a distinctive group in the community by attaching relevant census data to his pleadings. Petitioner contends that because the state habeas court summarily denied his ineffective assistance claim, he has had no opportunity to develop that data and that he is entitled to discovery and an evidentiary hearing on that claim.

31. Mr. Jackson is entitled to evidentiary development of his claim only if he satisfies the requirements of 28 U.S.C. § 2254 (e)(2)(A) or (B). Under § 2254 (e)(2), to be eligible for an evidentiary hearing, Jackson must show that

> (A) the claim relies on
>    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or
>    (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

32. Petitioner contends that he did not fail to develop the factual basis of his claim in the State court proceedings because there was no "lack of diligence, or some greater fault attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000). The U.S.

10

Supreme Court said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id, at 437. Mr Jackson claims that he satisfied this standard because he requested an evidentiary hearing on all his claims in the state habeas proceeding. This Court agrees that Petitioner did pursue this issue with diligence, however, an evidentiary hearing is not necessary to resolve this claim.

33.    Petitioner contends that the Court could take judicial notice of the census data but that the data itself has little meaning without information showing the percentage of African-Americans on venires in Otero County. Although the census figures are not part of the record before the Court, assuming that Petitioner's contention that the African-American population in Otero County was between 3.8 and 5 % during the relevant time period is correct, the Court notes that the absence of African-Americans from this venire was not statistically unlikely.

34.    Petitioner has not met his burden to show that there was a systemic and deliberate exclusion of African-American potential jurors in Otero County. See, e.g. Trujillo v. Sullivan, 815 F.2d 597, 610 (10th Cir. 1987 ) cert. denied 484 U.S. 929 (1987). There is no indication that if counsel had raised the fair cross section of the community claim that it would have been successful. Furthermore, given the low percentage of African-Americans that Mr. Jackson claims were residing in Otero County in 1998, it is highly unlikely that the petit jury would have included an African American even if the venire had been perfectly representative of the community. See Thomas v. Borg, 159 F.3d 1147, 1151-1152 (1998).

35.    In order to establish ineffective assistance of counsel under the Strickland standard, Mr. Jackson must show that his counsel's failure to challenge the procedure was objectively unreasonable and caused prejudice to the defense. Mr. Jackson failed to establish that even if one or more African-

11

Americans had served on his petit jury, the outcome of the trial would have been different. The court find that Counsel's conduct was neither objectively unreasonable nor prejudicial to Jackson's defense. Id.

**(C) Credibility of Rudy Castro**

36. Mr. Jackson alleges that Mr. Orquiz also provided ineffective assistance by failing to investigate the credibility of prosecution witness Rudy Castro, the undercover officer who arranged the alleged drug transactions with Mr. Jackson. Castro testified at trial about how he met Mr. Jackson and bought cocaine from him on three occasions. Castro stated that on the last date on which he bought cocaine from Mr. Jackson, Mr. Jackson took some of the cocaine for himself. Trial tape 5, 26.5. On cross examination defense counsel questioned whether that was a violation of the rules and regulations for undercover operations and Castro replied that it would have been if Castro had given Jackson the cocaine, but that Jackson took it. Trial tape 6, 23.1. Defense counsel then asked whether Castro ever told other persons to take some cocaine and the trial court sustained the prosecutor's objection on relevance. Out of the presence of the jury, the trial court later allowed defense counsel to question Deputy Castro to lay the foundation for the relevance of his prior questions. Trial tape 7, 17.0. Deputy Castro answered that he had purchased three packages of cocaine and then gave one to Wilfred Smith Jr. He said that he later found that what he had done was improper procedure, but that he testified that he had reported the incident to his supervisors and had testified about the incident in another court case. Id. at 17.9.

37. Defense counsel also intended to call Melvin Woods to testify that Deputy Castro was present when Wilfred Smith Jr. had offered to sell him cocaine. Id. at 19.0. The prosecutor objected and the trial court required defense counsel to tender a proffer of the testimony so the court could

12

rule on its admissibility. Id. at 20.1.   Out of the presence of the jury, Mr. Woods indicated that Mr. Smith told him that he and his partner had cocaine to sell.  Trial tape 8, 17.1.  Deputy Castro was the driver of a truck in which Mr. Smith was a passenger at the time Mr. Smith offered to sell Mr. Woods the cocaine.  Mr. Woods believed that Smith was referring to Deputy Castro when he spoke about his "partner" and  that Deputy Castro heard Mr Smith referring to him in that manner. Id. Defense counsel argued that the testimony was admissible to question the credibility of Deputy Castro because it showed he had engaged in illegal activity.  Id.   The trial court ruled that the testimony was not admissible because of " hearsay  problems," that the testimony had very little probative value and that it was excluded  under Rule 11-403 NMRA 1997. Id.  The New Mexico Court of Appeals affirmed the trial court's ruling after noting that extrinsic evidence of a witness' conduct is not admissible to attack the witness' credibility.

38.  Mr. Jackson also contends that defense counsel was ineffective because he did not impeach Deputy Castro's credibility with  information about an embezzlement allegation against Deputy Castro.  The incident that formed the basis for the embezzlement allegation occurred one month before Jackson's trial.  However, the Otero County Sheriff's Office,  the alleged victim of the embezzlement,  did not know of the incident until almost one year after Jackson's trial.  Counsel cannot be deemed ineffective for failing to discover information which was not available at the time of the trial and this argument is therefore without merit.

39.  Mr. Jackson raised the claim relating to Deputy Castro's credibility in his original and amended state habeas corpus petitions.  He also presented the factual basis for the claim to the state court by attaching to his petitions the investigative reports and criminal information regarding this issue.  The state habeas court denied Jackson's petition on the Castro issue without discussion or

findings of fact.

40.  Mr. Orquiz did attempt to challenge Deputy Castro's credibility during the trial.  Counsel was not ineffective for failing to explore the credibility of Rudy Castro.

**(D) Investigation of Mark Jenkins**

41.  Mr. Jackson also contends that counsel was ineffective for failing to investigate Mark Jenkins.  Deputy Castro testified that Mark Jenkins, a confidential informant, went with him to Jackson's residence.  Jackson argues that Orquiz should have moved to compel disclosure of identifying information and the location of Mr. Jenkins and should have scheduled an interview or deposition of Mr. Jenkins.  Petitioner contends that Mr. Orquiz had no strategic reason for failing to conduct discovery concerning Jenkins.

42.  Respondent argues that there is no evidence in the record that Jenkins' testimony would have contradicted Deputy Castro's testimony.  Mr. Jackson stated in the affidavit attached to his initial state habeas petition that "Mark Jenkins was a[n] active participant and present at all times during the allege[d] transactions and charges filed against affiant."  He stated that the "alleged transactions involved affiant and the state's informant, Mark Jenkins, not Castro as he testified to before the grand jury or [in the] jury trial."  Respondent argues that the affidavit is an admission by Jackson that he engaged in drug sales in Deputy Castro's presence, with Mark Jenkins.  Because any testimony Mr. Jenkins would have given would tend to implicate Mr. Jackson based on Mr. Jackson's own affidavit, Respondent contends that counsel's failure to compel an interview did not amount to ineffective assistance of counsel.

43.  As discussed above, Petitioner must first show that counsel's representation was objectively unreasonable.  In doing so, he must overcome the strong presumption that counsel's

14

conduct falls within the wide range of conduct that is considered to be trial strategy and is deemed reasonable professional assistance. <u>Moore v. Gibson</u>, 195 F.3d 1152, 1178 (10th Cir. 1999), cert. denied, 530 U.S. 1208 (2000). Trial counsel's choice and presentation of defenses and defense witnesses falls within the ambit of trial tactics and strategy. Petitioner's allegations are insufficient to overcome the presumption of objective reasonableness, especially in light of the affidavit which indicates that testimony by Mark Jenkins might have been more harmful than helpful to Mr. Jackson's case.

44. Mr. Orquiz's decision not to obtain discovery from Mr. Jenkins or to call him as a defense witness was not objectively unreasonable. Petitioner did not show that, absent counsel's decision on this matter, the outcome of the trial would have been different. Mr. Jackson has failed to meet either prong of the <u>Stickland</u> test for ineffective assistance of counsel on this issue.

45. For the foregoing reasons, the Court finds that Petitioner's claims regarding improper exercise of peremptory challenge and ineffective assistance of counsel afford no basis for habeas relief.

### Recommendation

I recommend that Mr. Jackson's "Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody," **[Doc. 1]** be DENIED and that this cause be DISMISSED WITH PREJUDICE in its entirety. Any pending motions should be DENIED as moot.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of

the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

 

                                     */s/ Robert Hayes Scott*
                                      ROBERT HAYES SCOTT
                                      UNITED STATES MAGISTRATE JUDGE