**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MAX A. JACKSON,

    Petitioner,

v.       Civ. No. 02-634 LH/RHS

JOE WILLIAMS, Warden, et al.,

    Respondents.

## MAGISTRATE JUDGE'S AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

1. THIS MATTER comes before the Court upon Petitioner's Brief on the Merits [Doc. No. 12], filed June 11, 2003, in support of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated, following a jury trial which convicted him of one count of conspirac to traffic cocaine and three counts of trafficking cocaine. Petitioner was sentenced to 24 years imprisonment.

2. Because Jackson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1994 (AEDPA), its standards apply to this case. Upchurch v. Bruce, 333 F.3d 1158, 1162-63 (10th Cir. 2003). Under those standards, a federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is contrary to, or involved an unreasonable application of clearly established Federal law, as determined by Supreme Court precedent; or (2) is an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254 (d)(1)-(2); Williams v. Taylor, 529 U.S. 362, 405-06, 411-13 (2000). A state decision is an unreasonable application of Supreme Court precedent if it identifies the correct governing legal

principle but unreasonably applies that principle to the facts of the prisoner's case. Id. A federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced. Wiggins v. Smith, _ U.S._, 123 S. Ct. 2527, 2535 (2003) quoting Lockyer v. Andrade, 538 U.S. 63, 74, 123 S. Ct. 1166, 1175 (2003). A state decision rests on an unreasonable determination of the facts where it is shown by clear and convincing evidence, 28 U.S.C. § 2254 (e)(1), that the factual finding is erroneous. Id. at 2539.

3. All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary. Trice v. Ward, 196 F.3d 1151, 1159 (10th Cir. 1999), cert. denied, 531 U.S. 835 (2000); Rule 8(a), Rules Governing Habeas Corpus Under Section 2254. For the reasons set forth below, the Court recommends that the petition be denied.

**General Factual and Procedural Overview**

4. The State of New Mexico indicted Jackson for three counts of trafficking cocaine by distribution and one count of conspiracy to traffic cocaine on October 3, 1996. Gary C. Mitchell, P.C., was appointed to represent Jackson. On October 24, 1996, the Mitchell firm filed a demand for discovery on Jackson's behalf. The document bears the name of Scot Key as counsel for Jackson. Key stated that a secretary signed the pleading for him and that the signature on the document was not his. Key Dep. 13-19.

5. In November 1996, Key was elected district attorney for the Twelfth Judicial District, Key Dep. 12, and on January 1, 1997, he took office. Key Dep. at 5. The district attorney's office continued the prosecution of Jackson after Key took office. Key instituted a policy of screening himself from cases in which the Mitchell firm had been involved during the time Key had been

employed there. Key Dep. 19-21. Key stated that under the policy, the Jackson case should have been screened, but was not. Key Dep. 22-23. Assistant District Attorney RoxeAnne Matise represented the state in Jackson's case. In May 1997, the Mitchell firm withdrew as Jackson's counsel, and Noel Orquiz entered his appearance as defense counsel. Orquiz Dep. 3.

6. A jury trial was held in August 1997. During jury selection, the prosecution exercised a peremptory challenge against venire member Theodore Rodriguez. Trial tape 3 at 7.3. Defense counsel objected and asked that the prosecution be required to state a race-neutral reason for the strike. Id. The trial judge requested the prosecutor to make a record of the reasons for the challenge. The prosecutor stated that she believed that Mr. Rodriguez was biased toward Mr Jackson because the prospective juror had expressed concern about whether Jackson (who is African-American) would be able to get a fair trial when none of the persons in the venire appeared to be African-American. Id. at 8.6. The trial judge found that prosecutor challenged the juror because "his over sensitivity to race related issued may affect his ability to be fair and impartial" which satisfied the requirement under Batson v. Kentucky, 476 U.S. 79, 97-98(1986) of a race-neutral reason, overruled the objection and permitted the prosecution to exercise the peremptory strike. Id.

7. At trial, the state presented evidence that Jackson had sold cocaine to Deputy Rudy Castro, an undercover narcotics agent of the Otero County Sheriff's Office. Trial tapes 5 and 6. The trial court refused to allow Jackson to present testimony from Melvin Woods that Agent Castro, the state's key witness, had approached Mr. Woods and offered to sell him drugs. Trial tape 7, 17.0. The state's informant, Mark Jenkins, did not testify at the trial.

8. The jury found Jackson guilty on all counts. The court found Jackson eligible for habitual offender enhancement and sentenced him to a total of 24 years incarceration.

3

9. On direct appeal, Plaintiff presented three issues for review: (1) that the state used a peremptory challenge in a discriminatory manner when it removed a Native American juror; (2) that his right to confront witnesses against him was violated when the trial court refused to allow him to present testimony that undercover officer Castro was attempting to sell a controlled substance during the investigation; and (3) that the state should not have been allowed to introduce a tape-recording of a conversation between Jackson and Agent Castro because the state did not disclose the tape until the eve of trial. The Court of Appeals affirmed the conviction. State v Jackson, No. 19,284 (N.M.Ct.App. July 14, 1998). On August 24, 1998, Jackson's petition for writ of certiorari was denied. State v. Jackson. 964 P.2d 818 (Table), 125 N.M. 654 (1998).

10. On June 11, 1999, Jackson filed a pro se state petition for writ of habeas corpus. Answer, Exh H.[1] The district court denied the petition. Exh. I. The New Mexico Supreme Court denied certiorari on September 7, 1999. Exh. K.

11. On September 29, 1999, Jackson filed a petition for a writ of habeas corpus in this court. Civ. 99-1107 BB/KBM. On September 19, 2000, the court dismissed the petition without prejudice to permit Jackson to exhaust certain claims in the New Mexico courts.

12. On December 29, 2000, Jackson filed his amended petition for writ of habeas corpus in state court. Exh. L. On January 16, 2001, the state district court entered an order holding that Jackson was not entitled to relief as a matter of law on any of the claims in his state habeas petition with the exception of his claim that Scot Key's conflict of interest violated Jackson's right to due process and a related ineffective assistance of counsel claim. Exh. M. Following discovery on that

---

[1] Unless otherwise noted, all citations to exhibits are those attached to Respondent's Answer.

issue, the parties submitted those issues to the court on a stipulated record. After briefing, the court entered its order denying the petition. Exh. O. Jackson filed a Petition for Writ of Certiorari which was denied by the New Mexico Supreme Court on May 14, 2002. Exh. T.

13. Jackson's § 2254 petition raised six grounds of error, one of which included several sub-claims. In his brief on the merits, Petitioner concedes that he has failed to establish a basis for relief on four of those claims, but wishes to preserve his Apprendi habitual offender sentencing claim (Claim Four) in the event the law changes in his favor. See Apprendi v. New Jersey, 530 U.S. 466 (2000). ( Petitioner acknowledges that the Apprendi ruling has not been applied retroactively on initial collateral review. See, e.g., United States v. Mora, 293 F.3d 1213, 1218-19 (10th Cir.), cert. denied,, 537 U.S. 961 (2002)). Petitioner argues that he is entitled to relief on Claims Two and Five of his petition and this opinion will address only those claims.

## Batson Challenge

14. Claim Two alleges an improper peremptory challenge by the prosecution against venire member, Theodore Rodriguez, in violation of Jackson's right to a jury drawn from a fair cross-section of the community, his right to equal protection and his right to due process. Jackson is African-American. In its memorandum opinion on direct appeal, the New Mexico Court of Appeals described Mr. Rodriguez as Native-American.

15. The Respondent contends that the state's conclusion that Mr. Rodriguez is Native-American is not supported by any facts on the record. The state court's finding on this factual issue is entitled to a presumption of correctness under 28 U.S.C. §2254 (e)(1) and this Court has reason to disagree with that factual finding.

16. Petitioner argues that the decision upholding the peremptory excusal of a minority

5

venireperson because that venireperson expressed concern about the fairness of trying Jackson before an a jury with no African-American jurors constitutes an unreasonable application of the equal protection principles set forth in Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny, including Powers v. Ohio, 499 U.S. 400, (1991). In Batson, the United States Supreme Court held that the Fourteenth Amendment prohibits the prosecution from challenging potential jurors solely because of their race and that the defendant, who was African-American like the jurors excluded from his jury, had the right to object to the prosecutions use of peremptory strikes to remove members of his race from the petit jury. The Court created a three step inquiry by which the defendant could prove that the States use of peremptory strikes was based on race and thus violated the defendants Fourteenth Amendment right to a jury selected by non-discriminatory criteria.

17. The Supreme Court expanded the doctrine in the Powers case when it held that a defendant has the right to object to the prosecutions use of race-based peremptory strikes of jurors from the petit jury even if that defendant, like Jackson, is not the same race as those jurors sought to be excluded. The Court explained that although a defendant has no right to a petit jury composed in whole or in part of person of the defendants own race, he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria. Id. at 404.

18. The New Mexico Court of Appeals found that Jackson had established a prima facie case of racial discrimination under Batson "based in the showing that the State had used a peremptory challenge to exclude the only Native-American juror who had a chance of serving on the jury," Once a defendant establishes a prima facie case of racial discrimination, then the prosecutor must provide a race neutral explanation for challenging the juror. Batson, 576 U.S. at 97. A race-neutral explanation "means an explanation based on something other than the race of the juror." Hernandez

6

v. New York, 500 U.S. 352, 360 (1991). A juror's bias or inability to decide the case impartially may be a race-neutral explanation. Powers, 499 U.S. at 409. The prosecutor claimed that comments made by Rodriguez in voir dire indicated a bias towards Jackson.

19. Jackson argues that the prosecution's response is pretextual and that the prosecution's peremptory challenge was actually based on Rodriguez's race. He contends that a minority venireperson's concern about the racial imbalance of the venire cannot be separated from that venireperson's race and from the perspective that his experience as a member of a minority group provides. Although the Respondent states that this issue was not raised before, Jackson did argue that the prosecutor's failure to question the juror about the prosecutor's concerns suggests that the prosecutor's reasons were not race-neutral. The Court finds that this issue has not been procedurally defaulted.

20. The New Mexico Court of Appeals found that the prosecution's reason for the peremptory challenge was supported by the record. The prosecutor's belief that Rodriguez's statement suggested a bias in Jackson's favor was found to be a race-neutral explanation reason for excluding Rodriguez from the jury. The Court stated that Rodriquez's comments during voir dire showed "a certain degree of sympathy" for Jackson and noted that a defendant " is not entitled to have a juror who has expressed sympathy toward him serve on his jury." The Court found "the prosecution did not use its peremptory challenge to exclude this juror because of the juror's race, but because the juror's comments indicated the juror was sympathetic to [Jackson]." Exh. E at p 2-3.

21. Petitioner contends that the reason given by the prosecutor for the peremptory challenge plainly cannot be deemed race-neutral and therefore must be found pretextual. That statement does not provide this Court with any basis to overcome the state court's determination that Rodriguez

7

was stricken for a race-neutral reason. Petitioner has not met the burden of showing that the race-neutral explanation given by the prosecutor is pretextual.

22. The writ may only be granted if this Court finds that the state court arrived at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law; decided the case differently than the Supreme Court of the United States has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of the petitioners case. Van Woudenberg v. Gibson, 211 F. 3d 560, 566 ( 10th Cir. 2000)( citing Williams v. Taylor, 529 U. S. 362 (2000)). The state court decision is not contrary to Supreme Court precedent, is not an unreasonable application of Supreme Court precedent, and is not based on an unreasonable determination of the facts. Accordingly, this Court finds Jackson's Batson challenge to be without merit.

**Ineffective Assistance of Counsel**

23. Claim Five alleges ineffective assistance of counsel for four reasons. Jackson claims that Orquiz erred when he:

    (a) failed to seek disqualification of the district attorney's office;

    (b) failed to object that the trial jury did not represent a fair cross-section of the community;

    (c) failed to investigate the credibility of prosecution witness, Rudy Castro; and

    (d) failed to move to compel disclosure of the location of informant Mark Jenkins.

24. To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, Petitioner must establish that his counsel's performance "fell below an objective standard of reasonableness." Id. at 688. To meet this first prong, "petitioner must overcome the 'strong presumption that counsel's conduct falls

8

within the wide range of reasonable professional assistance.'" Hickman v. Spears, 160 F.3d 1269, 1273 (10th Cir. 1998) (quoting Strickland, 466 U.S. at 689); see also Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998). When analyzing the performance of Petitioner's counsel, this Court will focus on "not what is prudent or appropriate, but only what is constitutionally compelled." United States v. Cronic, 466 U.S. 648, 665 n.38 (1984). Additionally, Petitioner's claim of ineffective assistance of counsel will be viewed "from the perspective of his counsel at the time he rendered his legal services, not in hindsight." Hickman, 160 F.3d at 1273; accord Strickland, 466 U.S. at 689.

25. The second prong of the Strickland test requires Petitioner to show that his counsel's deficient performance prejudiced his defense. Strickland, 466 U.S. at 692. To satisfy the second prong, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

### (A) Counsel's Failure to Seek Disqualification of District Attorney's Office

26. Jackson claims that his counsel provided ineffective assistance by failing to seek disqualification of Scot Key and the District Attorney's office. Initially Jackson was represented by the law firm of Gary C. Mitchell, P.C. which employed Scot Key. Key allegedly signed a Notice of Discovery Demand on behalf of Jackson. In November of 1996, Key was elected District Attorney and that office conducted the prosecution of Jackson.

27. Jackson raised this issue in his amended state habeas petition. Exh. L at 5-6. The state habeas court allowed evidentiary development on that aspect of Petitioner's ineffective assistance of counsel claim. The state court ordered discovery and presentation of evidence including depositions of Scot Key, Roxeanne Matise (the assistant district attorney who represented the state at trial of Jackson's case), Beatrice Brickhouse (an attorney in the Gary Mitchell law firm who represented

9

Jackson during part of the pretrial period) and Noel Orquiz (Jackson's trial counsel). No further evidentiary proceedings are required.

28. The state court found that no evidence was presented that Scot Key participated personally and substantially in any matter involving Jackson while employed at the Mitchell law firm. The court concluded that : (1) Jackson failed to establish a conflict of interest which would disqualify the District Attorney's Office from prosecuting Jackson; (2) even if a conflict of interest existed, Jackson failed to establish that Scot Key participated in Jackson's prosecution; (3) even if a conflict existed, a reasonable investigation by a reasonably competent defense counsel would not have disclosed the conflict; and (4) even if the conflict existed and a reasonable investigation would have disclosed the conflict, Jackson failed to establish that defense counsel's failure to seek disqualification based on the conflict prejudiced Jackson. Exh. O. The state court therefore denied Jackson's claims.

29. Under § 2254(e)(1), this court must presume the state court's findings to be correct, unless Jackson rebuts that presumption by clear and convincing evidence. The depositions and the record support the state court's findings and conclusions on this issue.

30. In order to establish ineffective assistance of counsel under the <u>Strickland</u> standard, Jackson must show that his counsel's failure to seek disqualification of Key and his office was objectively unreasonable and caused prejudice to the defense. Having determined that Petitioner has not rebutted the presumption that the findings of the state court were correct on this issue, the Court finds that Orquiz was not ineffective by failing to seek disqualification of the district attorney's office. Counsel's failure to raise a non-meritorious claim could not have caused prejudice to the Petitioner.

**(B) Fair Cross Section of the Community Claim**

31. Jackson contends that Orquiz rendered ineffective assistance of counsel by failing to raise a Sixth and Fourteenth Amendment fair cross-section challenge to the jury selection procedure. Petitioner asserts that his due process rights to a fair and unbiased jury were violated because the venire from which his jury was selected included no jurors of his race, African American. Jackson requested before trial that Orquiz attempt to obtain a jury with one or more African - American members. He argues that Orquiz should have objected that the trial jury did not represent a fair cross section of the community and challenged the venire selection procedure.

32. Petitioner presented no evidence either during jury selection at the trial or during appeal that there was an express exclusion of African-Americans from the venire pool. See, Taylor v. Louisiana, 419 U. S. at 522. Petitioner raised his argument that Orquiz was ineffective because Orquiz failed challenge the venire selection procedure in his state habeas petition. The New Mexico Court of Appeals summarily denied Jackson's petition on the fair cross-section issue. Exh. M.

33. The Sixth Amendment guarantees the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. The right to an impartial jury encompasses the right to a jury drawn from a fair cross section of the community. Taylor v. Louisiana, 419 U. S. 522, 526-31, 95 S. Ct. 692, 696-98 (1975). A defendant challenging the composition of the jury pool on Sixth Amendment grounds must show that the representation of a particular group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and that this under representation is due to a systematic exclusion of the group in the jury selection process. Duren v. Missouri, 439 U. S. 357, 364, 99 S. Ct. 664, 668 (1979). To establish a prima facie case of a due process violation, Jackson must show that the government purposefully discriminated against his racial

11

group. Batson, supra.

34. Respondent argues that Mr Jackson failed to prove his claim because he did not show that African-Americans constitute a distinctive group in the community by attaching relevant census data to his pleadings. Petitioner contends that because the state habeas court summarily denied his ineffective assistance claim, he has had no opportunity to develop that data and that he is entitled to discovery and an evidentiary hearing on that claim.

35. Jackson is entitled to evidentiary development of his claim only if he satisfies the requirements of 28 U.S.C. § 2254 (e)(2)(A) or (B). Under § 2254 (e)(2), to be eligible for an evidentiary hearing, Jackson must show that

> (A) the claim relies on
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

36. Petitioner contends that he did not fail to develop the factual basis of his claim in the state court proceedings because there was no "lack of diligence, or some greater fault attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000). The U.S. Supreme Court said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id. at 437. Jackson claims that he satisfied this standard because he requested an evidentiary hearing on all his claims in the state habeas proceeding. This Court agrees that Petitioner did pursue this issue with diligence,

however, an evidentiary hearing is not necessary to resolve this claim.

37. *Petitioner contends that the Court could take judicial notice of the census data but that* the data itself has little meaning without information showing the percentage of African-Americans on venires in Otero County. Although the census figures are not part of the record before the Court, assuming that Petitioner's contention that the African-American population in Otero County was between 3.8 and 5 % during the relevant time period is correct, the Court notes that the absence of African-Americans from this venire, while not ideal, indicates only a slight under-representation in the particular jury pool utilized in his case. The evidence of a discrepancy on a single venire panel is insufficient to demonstrate systemic exclusion. United States v. Ruiz-Castillo, 92 F.3d 1527 (10th Cir. 1996). Furthermore, given the low percentage of African-Americans that Jackson claims were residing in Otero County in 1998, it is unlikely that the petit jury would have included an African American even if the venire had been perfectly representative of the community.

38. In order to establish ineffective assistance of counsel under the Strickland standard, Jackson must show that his counsel's failure to challenge the procedure was objectively unreasonable and caused prejudice to the defense. In light of the few African-Americans Otero County, Orquiz's failure to bring an objection based on the scarcity of blacks on the jury panel is not unreasonable. Jackson presents the Court with no evidence of systemic exclusion of African-Americans from venire panels in Otero County and has failed to establish that even if one or more African-Americans had served on his petit jury, the outcome of the trial would have been different.

39. Although juries must be drawn from a source fairly representative of the community, Taylor, 419 U. S. at 538, a defendant has no right to a petit jury composed in whole or in part of persons of his own race. The Constitution does not demand a representative jury, but only an

13

impartial one. [internal punctuation marks omitted]. Beachum v. Tansy, 903 F. 2d 1321,1331 (10th Cir. 1990) (citing Batson; and Holland v. Illinois, 493 U. S.474, 110 S. Ct. 803 (1990));United States v. Brooks,161 F. 3d 1240, 1246 (10th Cir. 1998).

40. The court find that Counsel's conduct was neither objectively unreasonable nor prejudicial to Jackson's defense. Orquiz's decision not to protest the absence of African-Americans on the venire panel did not constitute ineffective assistance of counsel.

### (C) Credibility of Rudy Castro

41. Jackson alleges that Orquiz also provided ineffective assistance because he failed to investigate the credibility of prosecution witness Rudy Castro, the undercover officer who arranged the alleged drug transactions with Jackson. Jackson raised the claim relating to Deputy Castro's credibility in his original and amended state habeas corpus petitions. He also presented the factual basis for the claim to the state court by attaching to his petitions the investigative reports and criminal information regarding this issue. The state habeas court denied Jackson's petition on the Castro issue without discussion or findings of fact.

42. Castro testified at trial about how he met Jackson and bought cocaine from him on three occasions. Castro stated that on the last date on which he bought cocaine from Jackson, Jackson took some of the cocaine for himself. Trial tape 5, 26.5. On cross examination defense counsel questioned whether that was a violation of the rules and regulations for undercover operations and Castro replied that it would have been if Castro had given Jackson the cocaine, but that Jackson took it. Trial tape 6, 23.1. Defense counsel then asked whether Castro ever told other persons to take some cocaine and the trial court sustained the prosecutor's objection on relevance. Out of the presence of the jury, the trial court later allowed defense counsel to question Deputy Castro to lay

14

the foundation for the relevance of his prior questions. Trial tape 7, 17.0. Deputy Castro answered that he had purchased three packages of cocaine and then gave one to Wilfred Smith Jr. He said that he later found that what he had done was improper procedure, but that he testified that he had reported the incident to his supervisors and had testified about the incident in another court case. Id. at 17.9.

43. Defense counsel also attempted to call Melvin Woods to testify that Deputy Castro was present when Wilfred Smith Jr. had offered to sell him cocaine. Id. at 19.0. The prosecutor objected and the trial court required defense counsel to tender a proffer of the testimony so the court could rule on its admissibility. Id. at 20.1. Out of the presence of the jury, Woods indicated that Smith told him that he and his partner had cocaine to sell. Trial tape 8, 17.1. Deputy Castro was the driver of a truck in which Smith was a passenger at the time Smith offered to sell Woods the cocaine. Woods stated that he believed that Smith was referring to Deputy Castro when he spoke about his "partner" and that Deputy Castro heard Smith referring to him in that manner. Id. Defense counsel argued that the testimony was admissible to question the credibility of Deputy Castro because it showed he had engaged in illegal activity. Id. The trial court ruled that the testimony was not admissible because of " hearsay problems," that the testimony had very little probative value and that it was excluded under Rule 11-403 NMRA 1997. Id. The New Mexico Court of Appeals affirmed the trial court's ruling after noting that extrinsic evidence of a witness' conduct is not admissible to attack the witness' credibility.

44. Jackson also contends that defense counsel was ineffective because he did not impeach Deputy Castro's credibility with information about an embezzlement allegation against Deputy Castro. The incident that formed the basis for the embezzlement allegation actually occurred one

month before Jackson's trial, however, the Otero County Sheriff's Office ( the alleged victim of the embezzlement) did not know of the incident until almost one year after Jackson's trial. Counsel cannot be deemed ineffective for failing to discover information which was not available at the time of the trial.

45. Orquiz repeatedly attempted to challenge Deputy Castro's credibility during the trial. Orquiz was not ineffective due to insufficient investigation of Castro's credibility and his performance did not fall beneath an objective standard of reasonableness. The Court finds this claim to be without merit.

### (D) Investigation of Mark Jenkins

46. Jackson also claims that his counsel was ineffective because Orquiz failed to move for disclosure of the location of confidential informant, Mark Jenkins, and because Orquiz failed to move to compel an interview or deposition of Jenkins. Deputy Castro testified that Jenkins was with him at Jackson's residence on at least one occasion. Jackson contends that there was no strategic reason for defense counsel not to pursue Jenkins as a witness.

47. Counsel has a duty to make reasonable investigations, or to make a reasonable decision that renders particular investigations unnecessary. Nguyen v.Reynolds, 131 F. 3d 1340 (10th Cir. 1997), cert. denied, 525 U. S. 852, 119 S. Ct. 128 (1998). In an ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's performance. See Miles v. Dorsey, 61 F. 3d 1459, 1475 (10th Cir. 1995) (citing Strickland, 466 U. S. at 690).

48. Jackson's affidavit states that "Mark Jenkins was a[n] active participant and present at all times during the allege[d] transactions and charges filed against affiant." Jackson asserts that the

16

confidential informant might testify that the "alleged transactions involved affiant and the state's informant, Mark Jenkins, not Castro, as he [Castro] testified to before the grand jury or [in the] jury trial." Although that testimony might reflect on Deputy Castro's credibility, Jackson's affidavit appears to be an admission by Jackson that he engaged in drug transactions with Mark Jenkins in Deputy Castro's presence. Furthermore, Petitioner failed to set forth what basis exist to assume the results of the trial would have been different had such an investigation been done.

49.  As discussed above, Petitioner must first show that counsel's representation was objectively unreasonable.  In doing so, he must overcome the strong presumption that counsel's conduct falls within the wide range of conduct that is considered to be trial strategy and is deemed reasonable professional assistance.  Moore v. Gibson, 195 F.3d 1152, 1178 (10th Cir. 1999), cert. denied, 530 U.S. 1208 (2000).  Trial counsel's choice and presentation of defenses and defense witnesses falls within the ambit of trial tactics and strategy.  Strategic decisions of counsel are not lightly second-guessed.  See Jackson v. Shanks, 143 F. 3d 1313, 1319-20 (10th Cir. 1998).

50.  Petitioner's allegations are insufficient to overcome the presumption of objective reasonableness, especially in light of the affidavit which indicates that testimony by Mark Jenkins might have been more harmful than helpful to Jackson's case. Because any testimony Jenkins would have given would tend to implicate Jackson based on Jackson's own affidavit, the Court cannot say that Jackson's trial counsel conducted a constitutionally inadequate investigation of Mark Jenkins nor that his decision to forgo the testimony of Jenkins was improper trial strategy rising to the level of a constitutional violation.

## Conclusion

51.  For the foregoing reasons, the Court finds that Petitioner's claims afford no basis for

17

habeas relief.

## Recommendation

IT IS HEREBY RECOMMENDED that Petitioner's §2254 Petition for the Writ of Habeas Corpus be DENIED ON THE MERITS and the Respondents Motion to Dismiss be GRANTED.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

*Robert H. Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE